**Mallory Anne (Hendrick) FRANCISCO, Respondent–Appellant,**

v.

**Jeffrey Allen HENDRICK, Movant–Respondent.**

**No. 27424.**

Missouri Court of Appeals, Southern District, Division One.

Aug. 1, 2006.

Abe R. Paul, The Paul Law Firm, Pineville, MO, for appellant.

Aaron W. Farber, Neosho, MO, for respondent.

GARY W. LYNCH, Judge.

Mallory Anne (Hendrick) Francisco ("Mother") appeals the judgment of the trial court modifying the child support obligation of Jeffrey Allen Hendrick ("Father") following a bench trial on Father's motion to modify. We reverse and remand.

The marriage between the parties was dissolved on April 23, 2001, at which time the parties were awarded joint legal custody of the couple's four children with "primary physical custody" to Mother.[1] Father subsequently filed for modification, which the trial court granted on September 25, 2003, awarding Father "primary physical custody" of the parties' oldest son. Mother retained "primary physical custody" of the three younger children, and the

---

1. "Missouri's statutory scheme does not allow for an order granting 'primary physical custody.'" *Speer v. Colon,* 155 S.W.3d 60, 62 (Mo. banc 2005). "'Custody' means joint legal custody, sole legal custody, joint physical custody or sole physical custody or any combination thereof." *Id.,* Section 452.375.1(1), RSMo 2000.

trial court set Father's child support obligation at $1,500.00 per month.

On September 17, 2004, Father again filed for modification of custody and child support, alleging "a substantial and continuing change in conditions and circumstances." Father alleged that he was terminated from his former employment, that the income derived from his current employment is a decrease of twenty percent or more, and that the parties' oldest child, who was then eighteen years of age, self-supporting, and over whom "parental control has been relinquished," is emancipated. Father also alleged that Mother "is currently self-employed and/or capable of full-time employment[.]"

Following a bench trial on October 13, 2005, at which both parties stipulated that their oldest child was emancipated, the trial court "adopted" Father's Form 14, found that Mother's income was $892.00 per month, and entered its judgment on November 21, 2005, thereby reducing Father's child support obligation to $1,093.00 per month. Mother appeals the trial court's modification of child support, presenting three points relied on.

In her first point, Mother contends that the trial court erred in "finding that Mother should have $892.00 of monthly income imputed to her in that she has not worked and has been a stay at home mother since the parties divorced." Mother asserts that "there was no credible or substantial evidence to support" the trial court's finding.

Point two alleges trial court error in "adopting" the calculation of Father's

monthly income as provided on the Form 14 submitted by Father. Further, Mother states that the trial court failed to make the requisite specific findings regarding the trial court's "deviation from the mandatory requirements of Rule 88.01.[2]"

Point three challenges the application of an adjustment for overnight visits by the trial court in its calculation of child support, as Mother contends that such an adjustment is not permissible under Rule 88.01 unless the income of the parent receiving child support exceeds, in Mother's case, $1,400 per month.[3] Mother contends that there was no evidence before the court that her monthly income exceeded that amount, even if the trial court had been correct in finding that her monthly income amounted to $892.00.

■■■ Modification of an order of child support requires a showing of a change in circumstances so substantial and continuing as to make the terms of the existing support order unreasonable. *Marra v. Marra*, 857 S.W.2d 520, 522 (Mo.App. 1993). If Father's current support payment deviates by more than twenty percent from his child support requirement mandated by the guidelines, a *prima facie* case of a substantial and continuing change in circumstances has been established. Section 452.370.1.[4] A change in circumstances "sufficient to support modification must be proven by detailed evidence and must also show that the prior decree is unreasonable." *Nelson v. Nelson*, 14 S.W.3d 645, 650 (Mo.App.2000). "When the party seeking modification has met this burden of proof, then Rule 88.01 and

---

**2.** Unless otherwise indicated, references to Rules are to Missouri Rules of Court (2006).

**3.** *CAVEAT* to Line 11 on Form 14 provides that "an adjustment on line 11 shall not be allowed unless the adjusted monthly gross income of the parent entitled to receive support (line 3) exceeds the amounts set forth in

the table below for the appropriate number of children." Here, the parties' three children live with Mother. Therefore, the adjusted monthly gross income designated in the table is $1,400.00.

**4.** Unless otherwise indicated, references to statutes are to RSMO 2000.

Form 14 are to be followed again to reset the award." *Marra,* 857 S.W.2d at 522.

■ Upon review of an award of child support, we must determine whether the trial court's determination of the presumed child support amount is supported by the evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Malawey v. Malawey,* 137 S.W.3d 518, 527 (Mo.App.2004). On appeal, a trial court's award of child support will not be disturbed " 'unless the evidence is "palpably insufficient" to support it.' " *Hall v. Hall,* 53 S.W.3d 214, 220–21 (Mo.App.2001) (quoting *Elliott v. Elliott,* 920 S.W.2d 570, 574 (Mo.App. 1996)).

Father's Form 14 lists $892.00 on line 1 as Mother's monthly gross income. The trial court's judgment includes a finding that Mother's monthly income is $892.00. Mother argues that "not only is there not substantial evidence to support imputing $892.00 per month income to her, there is little or no evidence to support such a finding represented on [Father's] Exhibit 3 (Form 14)."

Father testified that the amount of income attributed to Mother and listed on his Form 14 was a result of imputing minimum-wage income to Mother. Father stated that, to his knowledge, Mother was not employed full-time and had not completed college and received her degree. Father indicated that he believed Mother was able to earn at least minimum wage.

Mother testified that she baby-sits out of her home and has no other income. There was testimony regarding endeavors to breed and sell Chihuahua puppies, however Mother indicated that she no longer did so. When asked on direct examination whether she had any physical ailments, Mother stated she has eczema. In answering whether she had the ability to work, Mother stated, "I don't want to work with my son being small."

■ During cross examination by her counsel, Mother testified that her son, by her subsequent marriage, was two years old and that full-time employment would require her to place him into full-time daycare, which she did not wish to do. Counsel then began questioning Mother related to Father's income calculations. During this line of questioning counsel asked: "And we've shown that as—as strictly his gross income for 2004 and we—" however, the testimony is suspended at this point in the transcript. We next find a "TRANSCRIBER'S NOTE" which reads: "Tape 80 ends. Tape 81 begins with Mother's cross-examination still in progress but with an apparent break in the questioning."[5] The transcript continues with the following testimony:

Q. [By counsel for Mother]—babysitting part-time and selling a dog for now.

A. [By Mother] Right.

Q. Would that be correct?

A. Yes.

Q. Based on those calculations and giving him a credit for health insurance, that calculation comes out to be $1,600 a month; is that correct? $1,652 [sic]?

A. Yes.

Thereafter, Mother offered two Form 14s for the trial court's consideration. Each of these reflects that she receives an income of $134.00 per month. However, nothing in the partial transcript before this court supports the use of this amount or how it was calculated.

5. The transcript of this proceeding was made from an electronic recording of the trial. There is nothing in the record before us that indicates any action of Mother contributed to cause this omission in the record.

It appears that immediately preceding the gap in the transcript of the proceeding Mother was giving testimony about Father's income. As the transcript of the trial resumes following the omitted testimony it appears that Mother is concluding her testimony about her income. We are unable to determine whether this gap in the record omits very little of the proceeding and Mother simply failed to offer any evidence as to her income and very little evidence about Father's income or whether this gap omitted a significant portion of the proceeding and Mother offered substantial evidence of both hers and Father's income. Likewise, we have no way of determining what, if any, of the omitted testimony was relied upon by the trial court in reaching its judgment.

■ Our duty to dispose finally of a case unless justice requires otherwise " 'presupposes a record and evidence upon which this court can perform that function with some degree of confidence in the reasonableness, fairness, and accuracy of its conclusion.' " *Coffman v. Powell*, 929 S.W.2d 309, 312 (Mo.App.1996) (quoting *Taylor v. Coe*, 675 S.W.2d 148, 150 (Mo. App.1984)). "This court will not enter a judgment based upon mere speculation." *Goodman v. Goodman*, 165 S.W.3d 499, 501 (Mo.App.2005) (quoting *Oyler v. D.O.R.*, 10 S.W.3d 226, 228 (Mo.App.2000)).

■ Where a transcript of trial court proceedings is not complete and "[q]uestions, answers and rulings are not available to the parties or this court[,]" this Court's determination of the evidence received and considered by the trial court is precluded. *Loitman v. Wheelock*, 980 S.W.2d 140, 141 (Mo.App.1998) (finding that missing portions of transcript, transcribed as "inaudible," were "prejudicial because they prevent appellate review."). Absent preservation of the proceeding on the record, "full and meaningful review cannot be made." *Rivard v. Dir. of Revenue*, 969 S.W.2d 864, 865 (Mo.App.1998). "The appropriate remedy when the record on appeal is inadequate through no fault of the parties is to reverse and remand the case to the trial court." *Goodman*, 165 S.W.3d at 501.

All of Mother's points challenge the evidentiary basis of the trial court's determination of the amount of her income and Father's income. Absent a complete transcript including all of Mother's testimony related to the parties' respective incomes, we are unable to examine what evidence was received and considered by the trial court, and review of the claims raised by Mother in this appeal is impossible. Accordingly, we reverse the judgment and remand for a new hearing from which an adequate and complete transcript can be secured.[6]

RAHMEYER, P.J., and PARRISH, J., concur.

---

**6.** Hopefully, as trial courts move from using analog cassette tape recording devices, which require tapes to be changed often, to digital recording on computer hard disks, which can hold many hours of testimony in excess of a full day of trial without any requirement to change storage medium, the problem of gaps between tapes will be eliminated. Until that time counsel in courts using cassette tape recording devices would be well served to pay close attention to the clerk operating the tape recording device to make certain that a change of tapes is fully completed and that a record is in fact being made before proceeding with an examination.